**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re *Ex Parte* Application of Petronas Azerbaijan (Shah Deniz) S.à.r.l and Petronas South Caucasus S.à.r.l, pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings,<br><br>Petitioners. | Misc. Case No. M-_____ |

---

### *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Petitioners, Petronas Azerbaijan (Shah Deniz) and Petronas South Caucasus (collectively, "**Luxcos**" or "**Petitioners**"), respectfully ask this Court to grant the Order, attached as "**Exhibit A**" to this Application, which gives Petitioners leave pursuant to 28 U.S.C. § 1782 and Rules 26 and 45 of the Federal Rules of Civil Procedure, to serve Evergreen Parent GP LLC ("**Evergreen**"); Therium Capital Management (USA) Inc. ("**Therium Capital**"); Deutsche Bank AG; HSBC Bank USA; Citibank, N.A.; JP Morgan Chase & Co.; The Bank of New York Mellon; UBS AG; UniCredit Bank GmbH; UniCredit S.p.A.; Banco Santander, N.A.; Banco Bilbao Vizcaya Argentaria, S.A.; CaixaBank, S.A.; and Banco de Sabadell, S.A. (the "**Bank Entities**" and, collectively with Evergreen and Therium Capital, the "**Subpoenaed Entities**") the subpoenas attached as **Exhibits B through O** to this Application, and in support thereof states as follows.

This Application is brought by Petitioners for the purpose of obtaining necessary discovery in aid of certain foreign civil and private criminal proceedings that Petitioners intend to file in Luxembourg and Spain relating to a rogue arbitration proceeding commenced in Spain against the Malaysian government (the "**Arbitration**") *See* Memorandum of Law, in Support of *Ex Parte* Application for an Order to Conduct Discovery for Use in Foreign Proceedings

Pursuant to 28 U.S.C. § 1782, at 2. Commenced by eight persons claiming to be the heirs of the Sultan of Sulu (the "**Sulu Claimants**"), the Arbitration concerned a long-standing territorial dispute between the Sulu Claimants and Malaysia and culminated with the issuance of a highly-irregular purported final award (the "**Final Award**") issued by Mr. Gonzalo Stampa ("**Mr. Stampa**" or the "**Arbitrator**"), totaling USD $14.92 billion. *Id.* at 8. The Final Award purported to redraw the Malaysian borders and subjected the people of Malaysia to a debt comprising about 16% of Malaysia's entire annual budget. *Id.* That Final Award, however, was issued illegally and is thus devoid of legal authority. *Id.* at 6-13. Though initially appointed by the Spanish Court, the Arbitrator's appointment was annulled shortly after the Arbitration was commenced (by the same Court that initially approved Mr. Stampa's appointment). *Id.* at 6-7. Notwithstanding the annulment of his appointment, which had the effect of rendering it *void ab initio*, Mr. Stampa continued to assert his now non-existent authority over the proceedings, including improperly moving the seat of the Arbitration from Madrid to Paris *after* the date of annulment. For those actions, Mr. Stampa has been found criminally liable in Spain for ignoring and disobeying the orders of the Spanish Court. *Id.* at 8-9.

The abrogation of Mr. Stampa's authority by the Spanish Court has not diminished the Sulu Claimants' aggressive efforts to enforce the Final Award, which have caused harm to Petitioners. *Id.* at 11-12. Petitioners have incurred, and continue to incur, significant damages in seeking to set aside attachments that have been improperly levied over their bank accounts by the Sulu Claimants. *Id.* The Sulu Claimants have also threatened to enforce the improperly issued Final Award against the worldwide assets of the corporate group of which Petitioners are members, Petroliam Nasional Berhad ("**Petronas**"), a global Malaysian energy corporation. *Id.* at 2. Indeed, in addition to Luxembourg, the Sulu Claimants have publicly

stated that they will file suit in the other 169 countries in the world forthwith. *Id.* at 2.

Petitioners intend to pursue a civil claim against Mr. Stampa in Spain for damages arising from the harm incurred, and which continues to be incurred, by Petitioners as a result of the rogue Arbitration. *Id.* at 14-19. Petitioners also intend to bring a civil claim in Spain against the Sulu Claimants, their attorneys including lawyers working at the Spanish law firm, B. Cremades y Asociados ("**Cremades**"), and the entity (or entities) funding and/or supporting the Sulu Claimants in the Arbitration and the present global enforcement proceedings (the "**Funder**"), which Petitioners reasonably believe to be special purpose vehicles or other entities related to the Therium Group (as defined below), for acting with willful negligence by purposefully ignoring the revocation of Mr. Stampa's authority as arbitrator by the Spanish Courts prior to the issuance of the Final Award, and instead requesting Mr. Stampa to move the seat of the Arbitration from Madrid to Paris, away from the Spanish Court's jurisdiction. *Id.* at 19-20. Petitioners also intend to commence a private criminal prosecution against Cremades, the Sulu Claimants, and/or the Funder for inducing Mr. Stampa to commit a criminal offence. *Id.* Finally, Petitioners intend to pursue civil claims against the Sulu Claimants and the Funder in Luxembourg to recover the losses arising out of the Attachments (as defined below) brought against them in Luxembourg despite the Spanish Courts having nullified Mr. Stampa's appointment as Arbitrator and thus preventing him from issuing the purported Final Award. *Id.* at 20-25.

### *Historical Background*

The Arbitration was initiated by the Sulu Claimants in 2017. *Id.* at 5. The Arbitration concerns a dispute relating to certain territory located on the North Coast of Borneo, Malaysia (the "**Territory**" or "**Sabah**"). In 1878, the former ruler of the Territory, Sultan Mohammed

Jamulul Alam, the actual Sultan of Sulu, entered into an agreement for the cession of the Territory with Messrs. Alfred Dent and Baron Gustavus de Overbeck (the "**1878 Agreement**"). *Id.* The Sulu Claimants maintain that they are descendants of the Sultan of Sulu. *Id.* at 5. A confirmatory deed later confirmed the 1878 Agreement, establishing the British North Borneo Company as a successor party to the 1878 Agreement. *Id.* In the Arbitration, the Sulu Claimants alleged that Malaysia failed to tender the annual payment under the 1878 Agreement and 1903 Confirmatory Deed in the amount of 5,000 Malaysian Ringgit (the equivalent of approximately US $1,050). *Id.* at 4-5. The annual payments were initially paid by the British North Borneo Company, then by the British Crown from 1946 until 1963, at which point, payment was made by the Malaysian government. Malaysia stopped making payments in 2013 after the "Lahad Datu Standoff" where militants calling themselves the "Royal Security Forces of the Sultanate of Sulu and North Borneo" landed by boat on Sabah and asserted a territorial claim to the Territory on behalf of the Philippines. *Id.* at 5.

The 1878 Agreement contains a clause that the Sulu Claimants purport to be an arbitration agreement (which Malaysia disputes). *Id.* at 5-6. The meaning of that clause, and its correct translation, remain issues of dispute between, amongst others, the Sulu Claimants and Malaysia. However, the Sulu Claimants contend that it provides that any dispute between the parties "will be brought for consideration or judgment of [the British Empire's] Consul-General in Brunei." No such person currently exists. *Id.* As such, the Sulu Claimants resorted to the British Foreign Office to resolve the dispute, but it refused. *Id.* The Sulu Claimants ultimately persuaded the Civil and Criminal Chamber of the Superior Court of Justice of Madrid, Spain (the "**Madrid High Court**") to accept jurisdiction to compel arbitration of the "dispute," despite Spain having no present-day legal jurisdiction over either claimants or

respondent in the Arbitration.  In May 2019, the Madrid High Court rendered a decision appointing Mr. Stampa as the sole arbitrator in the Arbitration.  *Id.*

On May 25, 2020, Mr. Stampa issued a preliminary award ("**Partial Award**") confirming his jurisdiction and the validity of the purported arbitration agreement.  *Id.* at 6. Upon the request of Malaysia, on June 29, 2021, the Civil and Criminal Chamber of the Superior Court of Justice of Madrid annulled several earlier procedural decisions made by the Madrid High Court, including the judicial appointment of Mr. Stampa as Arbitrator (the "**June 29, 2021 Judgment**"), which had the legal effect of nullifying his historic and future actions in that capacity, including the already issued Partial Award and the subsequently issued Final Award.  *Id.* at 6-7.  Nevertheless, Mr. Stampa continued to exercise his purported authority as arbitrator and transferred the seat of the Arbitration from Madrid to Paris.  *Id.* at 7.  The French Court initially recognized the Partial Award, then subsequently stayed the enforcement of the Partial Award, but that stay was later lifted in June 2022, and recognition of the Partial Award was set aside by the French Court of Appeal.  *Id.* at 7-8.  The final decision regarding the recognition of the Partial Award currently remains pending before the French Cour de Cassation, which is the French Court of final instance.  *Id.* at 8.

On February 28, 2022, Mr. Stampa rendered the Final Award in Paris (collectively with the Partial Award, the "**Awards**").  *Id.*  The Final Award ordered Malaysia to pay the restitution value of the rights over the allegedly leased Territory, with pre-award interest of 3.96% per annum, as of January 1, 2013 until 2044, and ordered Malaysia to pay to the Sulu Claimants the amount of US $14.92 billion.  *Id.*  However, on December 22, 2023, Mr. Stampa was found criminally liable for "serious disobedience to authority" (i.e., contempt of court) by the judgment of Spanish Criminal Court for continuing the Arbitration in the face of the June

29, 2021 Judgment.  *Id.*  Mr. Stampa's appeal of the conviction to the Madrid Court of Appeal was dismissed on May 17, 2024, but he has since indicated that he will appeal the Madrid Court of Appeal's decision to the Spanish Supreme Court.  *Id.* at 9.

Petitioners have been sued twice by the Sulu Claimants in Luxembourg to enforce the illegally obtained Final Award.  *Id.* at 10-12.  In the first proceeding in July 2022, an attachment order was granted by the Luxembourg Court, resulting in the seizure of Petitioners' assets within the custody of nine banks, but the Luxembourg Court later set aside the attachments and rescinded the seizure order in January 2023.  *Id.*  On February 14, 2023, the Sulu Claimants filed and served a second enforcement proceeding in Luxembourg seeking to attach Petitioners' assets within the custody of seven banks.  That action remains pending.  *Id.*

The Final Award is highly irregular.  It bears no connection whatsoever to the value of the annual lease payments set forth in the instrument that formed the basis for the Arbitration. Indeed, the annual payment under the original 19th century colonial covenant was the equivalent of a mere US $1,050.  The Final Award granted a payment of US $14.92 billion—a sum that would require an annual payment of $1,050 for approximately <u>13 million years</u>.  It is difficult to understand how a cause of action predicated on an annual payment of US $1,050 could lead to a Final Award of US $14.92 billion.  It is even more difficult to understand why a litigation funder would choose to provide—according to public sources—funding of more than US $20 million for a cause of action with such an apparently low potential upside.  Petitioners, who have been directly injured by the Sulu Claimants' efforts to enforce the Awards, thus seek discovery from Evergreen Parent GP LLC (the parent entity of London based Therium Capital Management Limited ("**Therium**") which has been alleged in press coverage to have had some involvement in the funding of the Sulu Claimants' claims in the Arbitration), Therium Capital, and/or, and

various New York-based banks relating to communications and payments made in support of the Arbitration.  Petitioners seek bank records and documents from the Subpoenaed Entities that would be relevant to their proposed civil and private criminal actions against Mr. Stampa, the Sulu Claimants, Cremades, and the Funder.

Petitioners intend to use the discovery sought in support of civil and private criminal claims they intend to pursue against Mr. Stampa, the Sulu Claimants, Cremades, and the Funder, for damages incurred by Petitioners in the actual and threatened enforcement proceedings, which are a direct consequence of Mr. Stampa's criminal defiance of the Spanish Court's order annulling his appointment.  Based upon the Declarations of Pedro Soriano Mendiara and Fabio Trevisan and the accompanying Memorandum of Law to this Application, the Court should grant this Application *ex parte*.

A.  **The Documents Sought**

Petitioners seek discovery of documents relating to: (1) any money transfers between entities within the Therium Group of companies (of which Evergreen, Therium Capital and Therium are all members) (collectively, the "**Therium Group**") and Mr. Stampa; (2) any communications between entities within the Therium Group and any legal or natural persons related to or connected with Mr. Stampa who may have conspired with Mr. Stampa in the context of the Awards and/or who otherwise may have procured Mr. Stampa to emit the Awards; (3) any money transfers between entities within the Therium Group and any legal or natural persons related to or connected with Mr. Stampa who may have conspired with Mr. Stampa in the context of the Awards and/or who otherwise procured Mr. Stampa to emit the Awards; and (4) the level of control and direction which entities within the Therium Group have over the Sulu Claimants' legal strategy including the Sulu Claimants' decision to initiate

and maintain the Attachments against the Petitioners in Luxembourg.

**B.  <u>Petitioners' Application Should Be Granted</u>**

Petitioners meet all the statutory criteria for the issuance of an order allowing the requested discovery under 28 U.S.C. § 1782.  The Subpoenaed Entities are located in this District.  Petitioners seek to use the documents they request from the Subpoenaed Entities in the contemplated foreign proceedings.  The documents sought from the Subpoenaed Entities are necessary to support and provide evidence for Petitioners' claims against Mr. Stampa, the Sulu Claimants, Cremades and the Funder.  Moreover, as set forth in Petitioners' Memorandum of Law filed concurrently herewith, all the discretionary factors that this Court may consider likewise favor granting this *ex parte* application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) (describing discretionary factors).

Accordingly, Petitioners' respectfully request that the Court (a) grant the Application for Order to Conduct Discovery in a Foreign Proceeding *Ex Parte*; (b) enter the Proposed Order; (c) grant Petitioners leave, pursuant to 28 U.S.C. § 1782, to serve the subpoenas attached to this Application as Exhibits B through O; and (d) grant any and all other further relief to Petitioners as deemed just and proper.

Respectfully submitted this 28th day of May, 2024.

**BAKER & HOSTETLER LLP**

*/s/ Oren J. Warshavsky*

Oren J. Warshavsky
owarshavsky@bakerlaw.com
Gonzalo S. Zeballos
gzeballos@bakerlaw.com
Geoffrey A. North
gnorth@bakerlaw.com
Tatiana Markel
tmarkel@bakerlaw.com

Michelle Usitalo
musitalo@bakerlaw.com
Carlos Ramos-Mrosovsky
cramosmrosovsky@bakerlaw.com
J'Naia L. Boyd
jlboyd@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-
4200

*Attorneys for Petitioners*